Cite as 2025 Ark. App. 289

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-309

| | |
|---|---|
| | **Opinion Delivered** May 7, 2025 |
| MICHAEL HENDRIX | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| V. | [NO. 60CV-21-1950] |
| MARS WRIGLEY CONFECTIONERY US, LLC; AND JOE RICKEY'S ENTERPRISE, LLC, D/B/A JOE'S GROCERY AND DELI | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| APPELLEES | AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Michael Hendrix appeals the Pulaski County Circuit Court's grant of summary judgment to Mars Wrigley Confectionary US, LLC (Mars Wrigley), arguing that summary judgment was inappropriate. We affirm.

On March 22, 2021, Hendrix filed a complaint against Mars Wrigley and Joe Rickey's Enterprise, LLC, d/b/a Joe's Grocery and Deli (Joe's Grocery), alleging that on February 6, 2019, he purchased a Snickers candy bar from Joe's Grocery that "was infected and infested with worms, bugs or larvae, with some appearing to be live maggots." He alleged that Mars Wrigley put the candy bar into the stream of commerce; Joe's Grocery stocked and sold it to him; he was "made physically and mentally sick or ill as a result of eating and ingesting the defective Snickers candy bar"; he was required to seek medical treatment and medication as

a result of the incident; and he experienced continuing pain and suffering as a result of defendants' negligence and breaches of warranty.

After answering and denying liability, Mars Wrigley propounded requests for admission on Hendrix, who admitted that he did not purchase the product directly from Mars Wrigley; he did not have personal knowledge regarding how Mars Wrigley produced or made its candy bars; he did not know what type of eggs, larvae, or insects were in the candy bar; he did not know Joe's Grocery's food-storage practices; and he was not personally aware of Joe's Grocery's pest-control measures and procedures.

On July 30, 2021, Mars Wrigley filed a cross-claim against Joe's Grocery, alleging that Joe's Grocery negligently destroyed evidence by disposing of the candy bar; that the candy bar was not unreasonably dangerous at the time it left Mars Wrigley's control but was made so by Joe's Grocery's "subsequent alteration, change, improper maintenance, or abnormal use"; that Joe's Grocery was negligent in the way it handled the candy bar; and that negligent and improper handling was the proximate cause of any and all damages claimed by Hendrix. In an order filed on October 5, the circuit court granted Mars Wrigley's motion to compel discovery against Joe's Grocery; as a sanction for failing and refusing to respond to discovery, the circuit court struck Joe's Grocery's answer to Mars Wrigley's cross-claim and entered default judgment as to the issue of liability on the cross-claim.

On December 29, 2023, Mars Wrigley moved for summary judgment, alleging that Hendrix had "put forth no evidence that the candy bar contained insect larva when it left Mars Wrigley's possession." Additionally, Mars Wrigley alleged that Hendrix had "failed to

2

put forth any proof of when the insect larva was introduced into the candy bar—whether that was at Joe's Grocery, at the business that Joe's Grocery purchased the candy bar, or at any distributors and supplier(s) upstream." Mars Wrigley argued that summary judgment was appropriate because there was no genuine issue of material fact since there was no proof that the candy bar was in a defective condition when it left the possession of Mars Wrigley. Attached to the summary-judgment motion were Hendrix's answers to Mars Wrigley's requests for admission; Mars Wrigley's supplemental responses to Hendrix's interrogatories that stated it had never directly sold, delivered, or provided candy products to Joe's Grocery over the last ten years and lacked knowledge as to how Joe's Grocery came into possession of the product; and a portion of Hendrix's deposition in which he stated that he had no knowledge of how Joe's Grocery maintained or kept its products free of pests or insects or whether Joe's Grocery had any infestations before or after he purchased the candy bar, and he did not know of anyone else having an experience similar to his at Joe's Grocery.

Joe's Grocery filed its second motion for summary judgment on January 3, 2024.[1] Hendrix filed a joint reply to both motions for summary judgment on January 19. In his reply, with respect to Mars Wrigley, Hendrix asserted that there was no requirement that he prove when Mars Wrigley produced the candy bar in question that he purchased from Joe's Grocery; that it "would defy common sense" that a consumer would know the "ins and outs" of Mars Wrigley's operation; and that it would also "defy common sense" for one to think a

---

[1]Joe's Grocery filed its first motion for summary judgment on April 28, 2023. This motion was denied by the circuit court in an order filed on June 28, 2023.

3

candy bar containing maggots and sold within the expiration date would not be defective. Hendrix further alleged, "Mars has provided no information to show it did not produce and release the Snickers candy bar with maggots in it sold by Joe's to plaintiff."

On January 25, the circuit court entered an order granting Mars Wrigley's motion for summary judgment and dismissing Mars Wrigley from the case with prejudice. When that order was entered, Joe's Grocery's second motion for summary judgment was still outstanding; however, on January 29, the circuit court dismissed the entire case without prejudice for failure to materially comply with the court's scheduling order. On January 30, Mars Wrigley moved for a voluntary dismissal without prejudice of its cross-claim against Joe's Grocery; an order granting this motion was entered on the same day. On February 1, Hendrix moved to set aside the January 29 dismissal of the case without prejudice. On February 23, Hendrix filed his notice of appeal from the January 25 grant of summary judgment to Mars Wrigley. A hearing on Hendrix's motion to set aside the January 29 order of dismissal was held on April 22, and the circuit court denied that motion in an order entered on April 24.[2]

Hendrix argues on appeal that the circuit court erred in granting summary judgment to Mars Wrigley because issues of material fact remained to be litigated. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated.

---

[2]In its brief, Mars Wrigley argues that the order granting it summary judgment was not a final, appealable order and that the appeal should be dismissed. We have determined that it was a final, appealable order pursuant to our supreme court's opinion in *Mann v. Pierce*, 2016 Ark. 418, 505 S.W.3d 150, and we therefore reach the merits of the appeal.

*Summerfield v. Se. Freight Lines, Inc.*, 2024 Ark. App. 326, 690 S.W.3d 150. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material fact. *Id.* On appellate review, this court determines whether summary judgment was appropriate by deciding if the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* Review of issues of law is de novo. *Id.*

Arkansas Code Annotated section 16-116-101(a) (Repl. 2016), provides:

(a) A supplier of a product is subject to liability in damages for harm to a person or to property if:

(1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;

(2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and

(3) The defective condition was a proximate cause of the harm to a person or to property.

In a product-liability case, "a plaintiff must prove that the product in question was in a defective condition at the time it left the hands of the particular seller." *Campbell Soup Co. v. Gates*, 319 Ark. 54, 59, 889 S.W.2d 750, 753 (1994). "In the absence of direct proof that

the product is defective because of a manufacturing flaw, the plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Id.*

In *Campbell Soup*, Gates and her mother purchased from Warehouse Foods ten packages of chicken-flavored ramen noodle soup manufactured by Campbell. They prepared three packages when they arrived home, breaking up the noodles, placing them in boiling water, and adding the seasoning. Gates had eaten one bowl of the soup and half of a second bowl before she discovered what were later determined to be Trogoderma beetle larvae, both dead and alive, in the noodles. Gates sued Campbells and Warehouse Foods. At the close of Gates's case, Campbell moved for directed verdict, arguing that there was no basis from which the jury could infer any defect in the soup when it left Campbell's hands. The motion was denied, and the jury returned a verdict finding both Campbell and Warehouse Foods each 40 percent at fault, with the remaining 20 percent fault attributable to Gates. Judgment was entered jointly against Campbell and Warehouse Foods; although Warehouse Foods withdrew its appeal and paid the judgment, Campbell proceeded with its appeal. In reversing and dismissing the judgment against Campbell, our supreme court held that while there was no dispute that beetle larvae were found in the noodles, that fact was insufficient to assign liability to Campbell; the mere presence of the larvae was not enough to hold Campbell strictly liable for the contamination. In order to hold Campbell liable, it had to be shown that the noodles were in a defective condition when they left the care, custody, and control

6

of Campbell; however, no other testimony established a direct link to Campbell other than it was the manufacturer.

Here, as in *Campbell Soup*, Hendrix was unable to show that the Snickers bar was in a defective condition when it left the Mars Wrigley factory. He failed to eliminate all other possible causes of contamination for which Mars Wrigley would not be responsible after the candy bar left the Mars Wrigley plant. Therefore, summary judgment was appropriate.

Affirmed.

HARRISON and TUCKER, JJ., agree.

*Thompson Law Firm, PLLC*, by: *Theodis N. Thompson, Jr.*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Brandon T. Cole* and *Michael P. Vanderford*, for separate appellee Mars Wrigley Confectionery US, LLC.